IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2013 APR -8 A 11: 12

CLERK _C Caldwell_
SO. DIST. OF GA

MELINDA LEA CAMPBELL, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO.: CV512-085
)
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
)
Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Morton J. Gold ("the ALJ") denying her claim for supplemental security income. Plaintiff urges the Court to reverse and remand the ALJ's decision for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff filed an application for supplemental security income on November 7, 2007, alleging disability beginning August 15, 2006. (Doc. No. 14-6, p. 2). Plaintiff alleged she became disabled due to a multitude of conditions, including: degenerative arthritis, fibromyalgia, high blood pressure, seizures, and "worry". (Id. at pp. 7, 66). After her claim was denied initially and upon reconsideration, Plaintiff filed a request for a hearing; on August 26, 2009, an ALJ conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified. (Doc. No. 14-2, pp. 87-111). The ALJ issued an unfavorable decision and subsequently the Appeals Council

vacated that decision and remanded Plaintiff's case to the ALJ on October 27, 2010. (Doc. No. 14-3, pp. 21-23). The ALJ held another hearing and found that Plaintiff was not disabled within the meaning of the Social Security Act. (Doc. No. 14-2, p. 33). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at 2-4).

Plaintiff, born on May 28, 1966, was forty-five (45) years old when the ALJ issued his final decision. She is a high school graduate and holds a CNA certificate. (Doc. No. 14-2, pp. 48-49). Plaintiff has previous work experience as a waitress and a home health aide. (Id. at pp. 50-51).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R.

AO 72A
(Rev. 8/82)

§§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff had not engaged in substantial gainful activity during the period from her application date of November 7, 2007, through the date of his decision, August 17, 2011. (Doc. No. 14-2, p. 22). At Step Two, the ALJ determined that Plaintiff has: fibromyalgia; degenerative disc and joint disease from L4-S1; torn left rotator cuff with surgical repair and subsequent residuals; right shoulder degenerative joint disease; right carpal tunnel syndrome; infrequent seizure-like spells; polysubstance abuse; depression; insomnia; personality disorder, and anxiety. (Id. at 23). These conditions are considered "severe" under the Regulations. The ALJ found the following ailments alleged by Plaintiff to be "not severe": hypertension; an abscess on the right inner thigh; right ankle swelling; pineal gland cyst; mild scoliosis of the thoracic spine; arthritis of the feet; headaches; mild narrowing of the right sacroiliac joint with no

functional limitations; cuboid avulsion fracture; cat scratch fever; irritable bowel syndrome; and uneven leg length. (Id.). The ALJ determined that the Plaintiff's impairments did not meet or medically equal a listed impairment. (Id. at p. 24). The ALJ found that Plaintiff had the residual functional capacity to perform work at the light extertional level, with the following limitations: she can never perform activities requiring her to climb ladders, ropes, or scaffolding, reach overhead, or balance; never work in a hazardous environment where experiencing a seizure-like spell could endanger herself or another; her right arm can only be used for gross fingering and fine manipulation for no more than two-thirds of an eight hour work day; the work should not require constant and repetitive fingering and handling with her right hand; she can climb ramps/stairs, reach up to shoulder height; stoop for no more than one-third of an eight hour work day; and she should avoid concentrated exposure to extreme vibration that may exacerbate her low back pain and fibromyalgia trigger points. (Id. at pp. 25-26). At the fourth step, the ALJ determined that Plaintiff is unable to perform any past relevant work. (Doc. No. 14-2, p. 32). However, at the fifth and final step, the ALJ determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. (Id.).

## ISSUES PRESENTED

Plaintiff asserts that the ALJ made the following errors: (1) the ALJ improperly discounted the opinions of Plaintiff's treating physician, Dr. Thanki, contained in a August 25, 2009 mental capacities assessment; and (2) the ALJ erred in excluding Dr. Thanki's findings from his hypothetical to the vocational expert.

4

## **STANDARD OF REVIEW**

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Plaintiff's assertion that the ALJ erred by discrediting the mental capacity assessment performed by Dr. Thanki, Plaintiff's treating physician.**

Plaintiff asserts that the ALJ erred by not assigning controlling weight to the mental capacities assessment performed by Dr. Thanki in determining whether Plaintiff was under a disability. Plaintiff states that Dr. Thanki concluded, in the assessment dated August 25, 2009, that Plaintiff had: moderate restriction of daily living; moderate difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; one or two episodes of decompensation within a twelve month period, each of at least two weeks duration; and that on average, Plaintiff would miss three days of work per month because of her impairments or treatment for her impairments. (Doc. No. 16, p. 4). The ALJ gave Dr. Thanki's assessment minimal evidentiary weight when he concluded that Plaintiff had residual functional capacity to complete light exertional work. (Doc. No. 14-2, p. 30).

Ordinarily, the opinion of a "treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted). "Good cause" exists where the doctor's opinion "was not bolstered by the evidence, or where the evidence supported a contrary finding[, . . . or] where the doctors' opinions were conclusory or inconsistent with their own medical records." Id. (citations omitted). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Id. (citation omitted); see also Watkins v. Comm'r of Soc. Sec., 2012 WL 399995, at *3 (11th Cir. 2012) (finding that the administrative law judge's omission of a treating physician's sit/stand limitation from

AO 72A
(Rev. 8/82)

the claimant's residual functional capacity "[w]ithout a clear explanation" precluded the court from "determin[ing] whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence").

The ALJ based his decision to assign minimal weight to Dr. Thanki's functional capacities assessment, with the exception of his finding that Plaintiff did not have any indication of low or reduced intellectual functioning, on Dr. Thanki's failure to "support[ ] his functional capacities assessment with his treatment notes or other observations." (Doc. No. 14-2, p. 30). The ALJ clearly enumerated several supporting reasons for assigning Dr. Thanki's opinions minimal weight. The ALJ first noted that Dr. Thanki concluded Plaintiff suffered "major depression, anxiety, and personality disorder, but omit[ted] polysubstance abuse," although his medical records noted that Plaintiff

> was somewhat secretive, minimizing her narcotic pain medication use . . . was using Loratab four times a day . . . admitted to smoking marijuana and hinted she was on Xanax . . . [and] she apparently took an Ambien, tried to back up her car at a gas station, and backed into another car at 3:00 a.m.

(Id.). Second, the ALJ highlighted that Dr. Thanki's opinion reporting Plaintiff's "current GAF score was 55, and her highest score for the past year was 50," was inconsistent with Dr. Thanki's medical records. (Id.). Third, the ALJ pointed out that although Dr. Thanki opined the Plaintiff suffered periods of decompensation, "[t]here are no episodes of decompensation within a 12-month period lasting for two weeks or greater," reported in his records. (Id.). Further, the ALJ explained that Dr. Thanki's treatment notes make no mention of Plaintiff experiencing "any restrictions of activities of daily living or socially interacting with others." (Id.). Lastly, the ALJ recognized that, although Dr. Thanki opined that Plaintiff would miss work three days per month due to

her impairments, he did "not associate what impairment would cause her to miss those three days per month." (Doc. No. 14-2, p. 30).

The ALJ clearly articulated good cause for minimizing the opinions of Dr. Thanki, with the exception of his finding that Plaintiff does not have any evidence of low or reduced intellectual functioning. The ALJ's decision to place minimal evidentiary value on Dr. Thanki's assessment is supported by substantial evidence because Dr. Thanki's conclusions are inconsistent with or unsupported by the medical records.

II. **Plaintiff's contention that the ALJ erred in excluding Dr. Thanki's opinion findings from his hypothetical question to the vocational expert.**

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Lee v. Comm'r of Soc. Sec., 448 F. App'x 952, 953 (11th Cir. 2011) (quoting Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)). "The ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported, however." Id. (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004)).

The ALJ did not include, as limitations of Plaintiff's residual functional capacity, Dr. Thanki's opinion that Plaintiff would miss three days of work per month due to her impairments. (Doc. No. 14-2, pp. 79-85). The ALJ clearly set forth that he found that opinion conclusory because Dr. Thanki did not explain which of Plaintiff's ailments would cause her to miss three days of work per month. (Id. at p. 30). That determination was supported by substantial evidence. (Id. at pp. 29-30). As a result, the ALJ was not required to include those limitations in his hypothetical questions to the vocational expert. Furthermore, the ALJ included in his hypotheticals all of the

limitations he included in Plaintiff's residual functional capacity. See id. 79-81. Therefore, the vocational expert's answer that such a hypothetical person could perform light extertional work constitutes substantial evidence in support of the ALJ's decision. The Court finds no error with regard to the questions posed to the vocational expert by the ALJ.

## **CONCLUSION**

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 8th day of April, 2013.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)